### In the Matter of OMEGA AIRCRAFT CORPORATION, Debtor.
### No. 669–62–C.

United States District Court
D. Massachusetts.

Oct. 23, 1962.

Louis J. Ostric, New Bedford, Mass., for debtor.

Arthur T. Wasserman, Boston, Mass., for trust mortgagee.

CAFFREY, District Judge.

This matter came on for a hearing on debtor's petition for reorganization and upon the answer objecting thereto and seeking dismissal thereof filed by John L. Hawkins, Trust Mortgagee. After hearing testimony from various witnesses called by the petitioner and the trust mortgagee, I find the following facts.

Petitioner, Omega Aircraft Corporation, is a corporation organized under the laws of the State of New York, with a principal place of business in New Bedford, Massachusetts. It is a corporation which could become bankrupt under the Federal bankruptcy laws and it is presently unable to pay its debts as they mature.

Briefly stated, the business of this corporation in the past has been research and development, looking to eventual mass-production of helicopters and rotary-wing aircraft. As of this date petitioner has successfully designed and constructed the first and only twin-engine helicopter certified by the Federal Aviation Agency for transportation of civilian passengers and cargo. One helicopter has been completed and successfully flown and certified; four others are in varying stages of production

Because Omega has been engaged in extensive and expensive research and development, which culminated in the Federal Aviation Agency certification, it is presently without funds with which to complete the helicopters in production or to mass-produce similar machines. From May to December 1961, the Omega plant was closed due to lack of operating funds.

On or about December 26, 1961, all of the assets of Omega were transferred to John L. Hawkins, Esq. and two others, as trust mortgagees, and on or about that date a note in the face amount of One Million Dollars ($1,000,000), payable to the trust mortgagees, was executed by the directors of Omega. I find that the trust mortgage and note were executed because the principal officers and the stockholders of Omega, who were unsuccessful in obtaining working capital between June and December of 1961, were led to believe that the trust mortgagees could and would obtain and make available to Omega sufficient working capital to "rejuvenate" its business and thus enable Omega to move from the research and development phase into active and profitable manufacture of helicopters.

At this point, to appreciate the legal and economic significance of what has transpired to date in the affairs of Omega, it is necessary to review some of the background data relative to a corporation known as GO Helicopter Airlines, Inc. and to John L. Hawkins, Trust Mortgagee. I find that Mr. Hawkins is an attorney-at-law who maintains a law office in Pittsfield, Massachusetts, and that he is the brother-in-law of one Samuel G. Colt, an insurance broker with a place of business in Pittsfield. I find that Mr. Hawkins has done some legal work for Mr. Colt, and that on occasion Mr. Colt has loaned money to Mr. Hawkins and Mr. Hawkins has loaned money to Mr. Colt.

I find that in August of 1961, Mr. Hawkins, his legal secretary, Mrs. Beverly Clay, and one Herbert Jamul, organized a corporation called Eastern Copter Service, and I find that later the same year the name Eastern Copter Service was changed to GO Helicopter Airlines, Inc., with no other material change. This corporate entity will hereinafter be referred to as GO. Five Thousand shares of common stock were authorized for GO. Mr. Hawkins subscribed for 20.5 per cent, Mr. Jamul for 20.5 per cent, and Mr. Colt for 10 per cent of the stock of GO. Neither Mr. Hawkins nor Mr. Jamul made any payment whatsoever into the treasury of GO on account of their respective stock subscription contracts. The only funds ever put into the treasury of GO consisted of $1,000 paid by Mr. Colt on account of his stock subscription contract and $9,000 loaned by Colt to GO. Mr. Hawkins was elected President, Treasurer, Director and Clerk of GO and, also, has voted as a shareholder thereof. He continued in these positions until he resigned in December 1961, shortly before the execution of the trust mortgage involved herein. At some time not clear in this record, Mr. Hawkins gave his shares in GO to Mr. Colt, receiving nothing in payment therefor. After Mr. Hawkins' resignation Mr. Jamul was elected Vice-president of GO, Mr. Colt was elected Treasurer, and Mrs. Beverly Clay was elected Clerk. The office of President of GO was left vacant.

I find that GO never purchased any equipment, never had any tangible assets, and that its sole activity was the filing of an application with the Civil Aeronautics Board for franchises for the operation of helicopters between various cities in the Northeast. I also find that this application was never marked up for a hearing, and that Mr. Jamul resigned as Vice-president of GO some time during 1962.

I find that at a special meeting of the Board of Directors of Omega, held on December 26, 1961, to consider the execution of the trust mortgage, Mr. Hawkins represented to the directors present that if the trust mortgage agreement was executed and he was appointed as a trust mortgagee, he had assurance that he could obtain an order for the sale to GO of five helicopters for a total of $355,000, that an amount of $50,000 in addition thereto would be placed at the disposal

of the trust mortgagees, and that these funds should be adequate for the conduct of the business. He used the phrase "money is no object" in discussing the affairs of Omega. He then produced, and requested execution of, the trust mortgage agreement, and I find that it was executed by the directors in reliance on Mr. Hawkins' representations.

I further find that a special meeting of the shareholders of Omega was held on January 10, 1962 to consider ratifying the execution of the trust mortgage agreement and that at that meeting Mr. Hawkins exhibited to the shareholders present an amended contract calling for the sale by Omega of 15 helicopters to GO prior to the shareholders' voting to ratify execution of the trust mortgage, and I find that the shareholders voted to ratify execution relying on the representation that the contract with GO would bring in a gross income in excess of One Million Dollars. The representations made to the directors and shareholders as to the income to be expected from GO were, at the very least, factually false.

Mr. Hawkins testified that he made the above-described representations because he believed Mr. Colt was negotiating with a New York financial group to bring between one-half and one and one-half million dollars into GO, but the record makes it abundantly clear that at the time when Mr. Hawkins represented to the directors and shareholders of Omega that GO was a responsible company, he was not aware of any facts regarding the status of the negotiations between Mr. Colt and the New York group which indicated that GO would be capitalized, nor was he aware of any other legal guarantee of the solvency and responsibility of GO. He also testified that he had no knowledge of the financial responsibility of Mr. Colt, although the record shows that his negotiations with Mr. Colt have resulted in the expenditure by Colt of $130,000 in connection with Omega. (This includes a sale of the one completed helicopter to Colt by the trust mortgagee for $71,000.) Mr. Colt's negotiations with the New York financial group

fizzled and were terminated. GO has substantially been abandoned by the parties in interest, although not legally dissolved.

■ I find and rule that both the vote of the directors and the vote of the shareholders of Omega, adopting and ratifying the trust mortgage agreement, were procured by representations as to the funds to be reasonably expected from the Omega-GO contracts. I find that these representations were factually false, and that Mr. Hawkins, as President, Treasurer, Clerk and Director of GO, either knew them to be false when made or he knew nothing about GO which afforded any basis for his representations as to its financial responsibility.

I further find that there was a substantial failure of consideration on the part of the trust mortgagees with regard to the various undertakings set forth in the trust mortgage, and that the note and mortgage are not a valid obligation of Omega for $1,000,000.

I find that during the time Mr. Hawkins was connected with Omega he contacted a substantial number of groups and individuals seeking to interest them in Omega, but that he made no attempt to explore a Chapter X Reorganization with any of these groups or individuals. I further find that at least one of the negotiations which failed of fruition failed primarily because the officers of Omega were then unwilling to undertake a Chapter X Reorganization of this corporation.

■ With respect to the major issue open in this hearing, namely, whether or not the petition herein was filed in good faith, I find and rule that on the evidence before me the petition was filed in good faith, and that while it cannot be ruled as a legal certainty that a successful reorganization will, in fact, materialize, there is ample evidence in the record that responsible parties have shown an interest in revitalizing this corporation through the medium of a Chapter X Reorganization. I find that Omega is not a no-asset corporation, that its patents, the Federal Aviation Agency certifica-

tion, and its other assets, have a value that Mr. Hawkins himself represented would be worth at least $350,000 in a foreclosure sale on a package basis, and that it is not unreasonable to expect that a plan of reorganization can be effected.

Debtor's petition for reorganization is approved and respondent's prayer that the petition be dismissed is denied.